**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 21, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP905**

STATE OF WISCONSIN

Cir. Ct. No. 2017CV12323

IN COURT OF APPEALS
DISTRICT I

JACK MANI AND ROSE MANI,

PLAINTIFFS-RESPONDENTS,

HUMANA INSURANCE COMPANY,

INVOLUNTARY-PLAINTIFF-APPELLANT,

V.

SELECTIVE INSURANCE COMPANY OF AMERICA,

DEFENDANT.

APPEAL from an order of the circuit court for Milwaukee County: PEDRO A. COLÓN, Judge. *Order affirmed in part, reversed in part, and cause remanded for further proceedings.*

Before White, C.J., Donald, and Geenen, JJ.

¶1     GEENEN, J. Humana Insurance Company ("Humana") appeals from a circuit court order dismissing its crossclaims for declaratory judgment and breach of contract against Jack Mani.  On appeal, Humana argues that the circuit court should have granted its motion for summary judgment and its subsequent motion for reconsideration.  *See* WIS. STAT. § 809.10(4) (2023-24).[1]  Humana argues that the circuit court incorrectly concluded that the made whole doctrine applied to the crossclaims it pursued after abandoning its original crossclaims based on subrogation.

¶2     Although we agree with Humana that the made whole doctrine does not apply to the crossclaims pleaded in Humana's answer to Mani's amended complaint, we nevertheless conclude that Humana is not entitled to summary judgment because there are genuine issues of material fact to be resolved at trial.  Accordingly, we reverse in part the circuit court's final order dismissing Humana's crossclaims,[2] affirm the circuit court's nonfinal orders denying Humana's motion for summary judgment and reconsideration, and remand the cause for further proceedings.  Moreover, on remand, we instruct the circuit court to address the applicability of judicial estoppel to Humana's crossclaims.

### BACKGROUND

¶3     In 2015, Mani suffered injuries in a car accident caused by an underinsured motorist.  Because he was working at the time of the accident, Mani

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

[2]  For clarity, we reverse only the part of the circuit court's final order dismissing Humana's crossclaims.  We do not disturb the circuit court's finding that Mani was not made whole by the proceeds of his settlement recoveries in this lawsuit.

submitted a claim to his employer's worker's compensation carrier, AmTrust North America, Inc. ("AmTrust"). While AmTrust initially paid for Mani's accident-related treatment, it stopped providing him medical benefits after its medical examiner opined that the injuries related to the accident were resolved, and Mani's ongoing care was related to a pre-existing condition. AmTrust directed Mani to submit his medical bills to his personal health insurance carrier, Humana. Mani did not appeal the medical examiner's opinion and began submitting his medical bills to Humana, and Humana paid them.

¶4      In 2017, Mani sued several parties, including: the underinsured motorist who caused the accident (the "tortfeasor"); the tortfeasor's liability insurer, Allstate Property and Casualty Insurance Company ("Allstate"); and Mani's employer's underinsured motorist ("UIM") insurer, Selective Insurance Company of America ("Selective"). Mani also named both AmTrust and Humana as involuntary plaintiffs because they paid medical expenses on Mani's behalf. Humana filed a crossclaim in which it alleged that "it has become obligated to pay, and has paid, medical benefits" on behalf of Mani, and that "[b]y virtue of said payments and pursuant to the [insurance] policy, Humana is subrogated to the rights of [Mani] to the extent of all benefits provided and hereafter provided."

¶5      Prior to the final pretrial hearing, Allstate offered its $100,000 policy limit in exchange for Mani's dismissal of his claims against Allstate and the tortfeasor. Mani accepted the offer, and the $100,000 was split between Mani and his wife, as co-plaintiff, and their attorneys, along with AmTrust,[3] and Humana.

_____

[3] AmTrust received the full amount of its subrogated lien and was dismissed from the lawsuit.

Humana received $12,587.77 "for partial payment of their subrogated lien." After Mani's claims against the tortfeasor and Allstate were dismissed, Mani filed an amended complaint.[4]

¶6 The remaining parties stipulated that the tortfeasor was 100% causally negligent for the accident, the accident occurred while Mani was acting within the scope of his employment, and the sole issue to be addressed at trial was damages. The parties also stipulated that, although Humana's payments to treatment providers were reasonable in amount and medically necessary, whether the medical treatment was related to the accident remained in dispute.

¶7 After extensive pretrial litigation and just days before trial, Selective tendered its policy limit of $900,000, resolving Mani's UIM claim against Selective.[5] By agreement of the parties, the circuit court held in trust over $392,000 from the UIM settlement on account of Humana's remaining subrogation lien, and it stated that it would resolve Humana's claim by motion. However, rather than file a motion to resolve its subrogation lien, Humana filed an answer and crossclaim for declaratory judgment and breach of contract.

¶8 In this pleading, Humana abandoned its subrogation-based crossclaim and instead alleged that Mani breached the insurance policy by directing his health care providers to bill Humana instead of AmTrust and allowing Humana to wrongfully pay excluded claims. Specifically, Humana

---

[4] The amended complaint added a bad faith claim against Selective, but the circuit court bifurcated and stayed the claim pending adjudication of the underlying UIM claim.

[5] After the UIM claim was resolved, the circuit court lifted the stay on Mani's bad faith claim against Selective. Mani then filed an amended complaint adding factual allegations to the bad faith claim.

asserted that the insurance policy excludes coverage for injuries where "Workers' Compensation or similar coverage" is available, and that it is entitled to recover any costs from Mani that had been paid out in relation to the accident-related injury. This provision reads as follows:

> **Workers' compensation**
>
> This *master group contract* excludes coverage for *sickness* or *bodily injury* for which Workers' Compensation or similar coverage is available.
>
> If benefits are paid by *us* and *we* determine that the benefits were for treatment of *bodily injury* or *sickness* that arose from or was sustained in the course of, any occupation or employment for compensation, profit or gain, *we* have the right to recover as described below.
>
> ….
>
> As a condition to receiving benefits from *us*, *you* hereby agree, in consideration for the coverage provided by the *master group contract*, *you* will notify *us* of any Workers' Compensation claim *you* make, and *you* agree to reimburse *us* as described above. If *we* are precluded from exercising *our* recovery rights to recover from funds that are paid by Workers' Compensation or similar coverage *we* will exercise *our* right to recover against *you*.[6]

¶9    Humana alleged that because the accident occurred while Mani was acting in the course and scope of his employment, Humana "did not have an obligation to pay claims relating to health care treatment for Mani arising from the January 9, 2015 accident and any such claims were paid mistakenly, in error or were wrongfully paid by Humana."

---

[6] The enforceability of the policy's Worker's Compensation exclusion is not before us. We are asked only to determine whether Humana's crossclaims based on this provision are subject to the made whole doctrine.

5

¶10    Two days after filing its new crossclaims, Humana moved for summary judgment.  Humana argued that it and Mani agreed in a stipulation that the medical treatment Humana paid for was necessitated by the injuries Mani sustained in the accident, and it is undisputed that the accident occurred while Mani was at work.  Therefore, according to Humana, the Workers' Compensation provision of the policy excluded those claims and allows Humana to sue Mani directly to recover the mistakenly made payments on those claims.  Humana asserted that the made whole doctrine only applies to subrogation claims and that, because its crossclaims against Mani are not grounded in subrogation, the made whole doctrine[7] does not apply and Humana may recover directly from Mani regardless of whether Mani's total recovery fully compensated him for his loss.

¶11    Mani filed an answer in response to Humana's new crossclaims, asserting, among other defenses, that Humana's claims were barred by the voluntary payment doctrine and judicial estoppel.  In opposition to Humana's motion, Mani argued that the made whole doctrine applied to Humana's new crossclaims, and that in any event, Humana's summary judgment motion did not address any of Mani's affirmative defenses.  Mani also submitted an affidavit stating that he never withheld any information about his workers' compensation claim from Humana, and he never received a demand for payment from Humana.  Mani also observed that he was denied discovery on Humana's new crossclaims

---

[7] The made whole doctrine embodies the principle that, "[o]rdinarily, subrogation does not arise until the debt [to the injured party] has been fully paid."  *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 541, 253 N.W.2d 512 (1977).  In other words, a subrogated insurer cannot recoup its losses until the insured has fully recouped theirs.  *Id.* at 544 (explaining that a subrogated insurer "has no share in the recovery from the tort[]feasor if the total amount recovered by the insured from the insurer does not cover his [or her] loss").

because Humana filed its motion for summary judgment two days after filing the claims.

¶12    The circuit court denied Humana's motion for summary judgment. It reasoned that the stipulation Humana relied on actually stated that the parties agreed that the accident occurred while Mani was acting in the scope of his employment, but did not reflect an agreement that all medical bills paid by Humana related to injuries caused by the accident.  Humana argued that Selective, not Mani, was the party that disputed whether Mani's injuries were related to the accident, but the circuit court concluded that the stipulation was unclear and denied Humana's motion on that basis.  Although the parties argued about the application of the made whole doctrine, the circuit court did not rule on whether it applied to Humana's new crossclaims.

¶13    Humana moved for reconsideration, arguing again that Humana and Mani both agreed that the medical treatment paid for by Humana were for injuries caused by the accident.  Humana also argued that, even if there is a genuine issue of material fact about whether all of Mani's injuries related to the accident, it is still entitled to a declaratory judgment under the policy, and Humana can sue Mani directly to recover the amount it paid for excluded claims.  In opposition, among other arguments, Mani urged the circuit court to conclude that even if the workers' compensation provision of the policy was enforceable against him, Humana's claims were subject to the made whole doctrine.

¶14    The circuit court denied Humana's reconsideration motion.   In denying the motion, it again highlighted ambiguities in the record regarding the parties' stipulations.   Moreover, the circuit court observed that Selective had

previously taken the position that Mani stipulated only that whether certain medical treatment was related to the accident was a jury question.

¶15 The circuit court also concluded that the made whole doctrine applied to Humana's crossclaims. It explained that "[t]o find otherwise would allow Humana to make an impermissible 'end run' around Wisconsin's made-whole rule." The court further concluded that a genuine issue of material fact existed as to whether Mani was made whole.

¶16 Eventually, the circuit court scheduled a *Rimes* hearing,[8] with the sole purpose of determining whether Mani was made whole for his losses as a result of the accident by the $1,000,000 he actually recovered from Allstate and Selective. However, before the hearing, Humana filed a letter conceding that Mani was not made whole by his recovery, and therefore, given the circuit court's conclusion that the made whole doctrine applied, Humana's crossclaims should be dismissed. Based on Humana's concession and in consideration of its prior ruling that the made whole doctrine applied to Humana's crossclaims, the circuit court canceled the hearing and entered an order dismissing Humana's crossclaims with prejudice.

---

[8] *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982). At a *Rimes* hearing,

> a "trial" is conducted before the court solely to ascertain the damages suffered by the plaintiff.… If the damages found exceed those actually recovered by the plaintiff from all sources, the plaintiff will be found to be less than whole and will not be required to disgorge any of the amounts by which he has been indemnified.

*Muller v. Society Ins.*, 2008 WI 50, ¶38, 309 Wis. 2d 410, 750 N.W.2d 1 (citation omitted); *Rimes*, 106 Wis. 2d at 275-79.

¶17    Humana appeals.

## DISCUSSION

¶18    Humana appeals from the circuit court order dismissing its crossclaims, a final order under WIS. STAT. § 808.03(1). Under WIS. STAT. § 809.10(4), the orders denying Humana's motion for summary judgment and reconsideration are also properly before this court.[9] Humana's appeal revolves around the circuit court's conclusion that the made whole doctrine applied to Humana's crossclaims.

### I.    Humana did not waive its right to appeal by requesting that the circuit court dismiss its crossclaims.

¶19    As a threshold matter, Mani argues that Humana waived its appellate rights because, rather than proceed with a **Rimes** hearing, it asked the circuit court to dismiss its crossclaims, manufacturing an issue for appeal. Mani's argument challenges our jurisdiction over Humana's appeal because "an order or judgment must be appealable for an appellate court to exercise jurisdiction[.]" **Lassa v. Rongstad**, 2006 WI 105, ¶34, 294 Wis. 2d 187, 718 N.W.2d 673.

¶20    "Parties may not manufacture artificial issues for appeal." **Id.**, ¶35. However, "parties sometimes settle issues in a controversy ... such that the only question or questions remaining are ripe for appeal." **Id.**, ¶34; *see also* **Petta v.**

---

[9] To clarify a point of potential confusion, we expressly note that, under WIS. STAT. § 809.10(4), a party is not required to seek interlocutory review of a nonfinal judgment or order, including nonfinal judgments or orders on dispositive motions, to preserve its right to appeal from those nonfinal judgments or orders after a subsequent final judgement or order is entered. This marks a change from the now-repealed procedural statutes that were in effect when cases such as **Richie v. Badger Mutual Casualty Co.**, 22 Wis. 2d 133, 125 N.W.2d 381 (1963) and **Wittke v. State ex rel. Smith**, 80 Wis. 2d 332, 259 N.W.2d 515 (1977) were decided, prior to the enactment of § 809.10(4).

***ABC Ins. Co.***, 2005 WI 18, ¶32, 278 Wis. 2d 251, 692 N.W.2d 639 (relying on a stipulation that the plaintiffs were not made whole in rendering decision about the applicability of the made whole doctrine). Here, the issues Humana raises are not "manufactured." A single issue was to be decided at the ***Rimes*** hearing—whether Mani's damages exceeded his recovery—and Humana did not dispute that they did. With that fact issue resolved, and given the circuit court's prior ruling that the made whole doctrine applied, Humana's crossclaims could not succeed.

¶21     The cases Mani relies on are not analogous to the situation in this case. For example, in ***Cascade Mountain, Inc. v. Capitol Indemnity Corp.***, 212 Wis. 2d 265, 266, 569 N.W.2d 45 (Ct. App. 1997), the appellant appealed from a conditional judgment following the circuit court's dismissal of two of the appellant's three claims on summary judgment. "To avoid the expense of trying the remaining, more limited claim which had survived summary judgment, the parties stipulated to the entry of final judgment, but reserved specific rights conditioned upon the result on appeal." ***Id.*** We concluded that the appellant could not, "by stipulating to the entry of a conditional judgment, obtain a mandatory appeal of an interlocutory order." ***Id.*** at 269; *see also* ***Dyer v. Law***, 2007 WI App 137, ¶¶3, 9, 302 Wis. 2d 207, 733 N.W.2d 328 (involving separate claims not resolved by an earlier ruling which the claimants elected to forego so as to avoid further litigation before an appeal of the dismissal of their primary claims).

¶22     This case does not involve a conditional judgment or manufactured issues. Rather, as is often the case, the issues presented on appeal are "the product of one or more stipulations in the circuit court." ***Lassa***, 294 Wis. 2d 187, ¶34. Having settled the issue of whether Mani was made whole, "the only question or questions remaining are ripe for appeal," namely, whether the made whole doctrine applies to Humana's crossclaims. ***Id.***     Accordingly, under the

10

circumstances presented here, we conclude that Humana did not waive its right to appeal by requesting that the circuit court dismiss its crossclaims.

## II.    The made whole doctrine does not apply to Humana's crossclaims

¶23    Having briefly addressed why this court has jurisdiction over Humana's appeal, we turn to the merits of Humana's arguments.  Humana argues that the workers' compensation provision of the insurance policy excludes Mani's medical claims, and under this provision, Humana is entitled to sue Mani directly to recover the payments it made for excluded claims.  Humana asserts that its claims under the workers' compensation provision are not based on subrogation, and consequently, they are not limited by the made whole doctrine.  Whether the made whole doctrine applies to Humana's crossclaims is a question of law that we review de novo.  *Ruckel v. Gassner*, 2002 WI 67, ¶13, 253 Wis. 2d 280, 646 N.W.2d 11.

¶24    We agree with Humana that its new crossclaims are not limited by the made whole doctrine because these claims are not grounded in subrogation. Our review of the case law reveals that the made whole doctrine does not apply when an insurer's claim against the insured is not grounded in subrogation and is instead based on a coverage exclusion.

¶25    "In the insurance context, subrogation is a derivative right that permits an insurer to step into the shoes of the insured and to pursue recovery from the tortfeasor to the extent of the insurer's payments to the subrogor (the insured)." *Fischer v. Steffen*, 2011 WI 34, ¶31, 333 Wis. 2d 503, 797 N.W.2d 501. However, subrogation rights do not arise until the insured is fully compensated for the loss.  *Ruckel*, 253 Wis. 2d 280, ¶¶16-17.  Once the insured has been fully compensated, "any additional recovery by the insured would constitute unjust

enrichment," and therefore, the insurer is "entitled to assert its subrogation claim once the insured has been made whole." *Id.*, ¶17. . The made whole doctrine is so intertwined with the concept of subrogation that the principle is sometimes referred to as the "antisubrogation rule." *Id.*, ¶16.

¶26 Our supreme court explained that "[t]he made whole doctrine prevents competition between the injured party and the subrogated party (the insurer) when the injured party's damages exceed a limited pool of funds from which recovery may be had." *Fischer*, 333 Wis. 2d 503, ¶32. "Under the made whole doctrine, the injured party should be the first to tap into the limited pool of funds and recover on any loss," and "[w]hen someone can not be fully paid, the loss should be borne by the subrogee (the insurer)." *Id.*

¶27 Along with the collateral source rule, these equitable doctrines "work together to further the goals of ensuring that injured people recover for their loss and that tortfeasors pay for the damages they inflict." *Id.*, ¶34. Subrogation "ensure[s] that the loss ultimately falls on the tortfeasor and also prevent[s] an injured party from receiving a double recovery," while "the made whole doctrine ensures that in a situation when there are not sufficient funds to make the injured party whole, the injured party has priority over the subrogee (the insurer) in recovering from the limited pool of funds." *Id.*, ¶33.

¶28 In this case, Humana's original crossclaims were grounded in subrogation. It alleged that "it has become obligated to pay, and has paid, medical benefits" on behalf of Mani, and that "[b]y virtue of said payments and pursuant to the [insurance] policy, Humana is subrogated to the rights of [Mani] to the extent of all benefits provided and hereafter provided." Humana's original crossclaims, however, are not the operative crossclaims in this case. Humana replaced these

crossclaims with claims for declaratory judgment and breach of contract based on the workers' compensation provision of the policy. The new crossclaims are not grounded in subrogation; Humana asserts that it was never contractually obligated to pay the claims that it paid because those claims were excluded under the workers' compensation provision. The new claims are not in any way derived from Mani's rights against the tortfeasor. *See id.*, ¶31.

¶29    In prior cases, we have approved of an insurer bringing a direct claim against its insured to recover payments made under workers' compensation exclusions. For example, in ***Employers Health Insurance Co. v. Tesmer***, 161 Wis. 2d 733, 736, 469 N.W.2d 203 (Ct. App. 1991), the injured party's health insurer maintained that it had improperly paid for excluded claims. In particular, the insurer argued that its policy contained an exclusion for medical expenses covered by workers' compensation insurance and petitioned for leave to intervene in the insured's workers' compensation proceeding to recover the improperly made payments. ***Id.*** However, the insurer was prohibited from intervening in the workers' compensation proceeding under WIS. STAT. § 102.30(7)(b).[10] ***Tesmer***, 161 Wis. 2d at 736-37. The insurer argued that § 102.30(7)(b) violated the Wisconsin Constitution's certain remedy clause[11] because the "inability to intervene in its insured's compensation proceedings may preclude it from recovering the medical expenses previously paid on the insured's behalf."

_____

[10] WISCONSIN STAT. § 102.30(7)(b) states: "An insurer who issues a nonindustrial insurance policy described in par. (a) may not intervene as a party in any proceeding under this chapter for reimbursement under par. (a)."

[11] Article I, section 9 of the Wisconsin Constitution guarantees every person "a certain remedy in the laws for all injuries, or wrongs which he [or she] may receive in his [or her] person, property, or character[.]"

*Tesmer*, 161 Wis. 2d at 738. We disagreed, observing that the insurer had other remedies. In particular, we explained that if the insurer "believes it has improperly paid [the insured's] expenses, it may proceed against [the insured] directly for reimbursement." *Id.*

¶30 In *Brown v. Muskego Norway School District Health Plan*, No. 2018AP1799, unpublished slip op. (WI App Oct. 16, 2019), we determined that the made whole doctrine did not apply to an insurer's claim under a policy exclusion similar to the one at issue in this case. In *Brown*, the policy excluded claims "arising out of and in the course of employment if benefits are available under any Workers' Compensation Act or other similar law[.]" *Id.*, ¶8.[12] The policy exclusion also stated that "[w]henever payment has been made in error, the [insurer] will have the right to recover such payment from [the insured.]" *Id.* The insured argued that the insurer's claim was a "crafty maneuver" to avoid the made whole doctrine, but we disagreed. Citing *Tesmer*, we concluded that the insurer had the right to proceed directly against its insured for payments it made on excluded claims, and those claims were not limited by the made whole doctrine.[13] *Id.*, ¶¶20-21.

---

[12] Notably, in *Brown v. Muskego Norway School District Health Plan*, No. 2018AP1799, unpublished slip op., ¶¶4-5 (WI App. Oct. 16, 2019), the workers' compensation insurer determined that the accident arose out of and in the course of the insured's employment and was compensable, but the insured declined workers' compensation benefits, withdrew his claim, and misrepresented the circumstances of the accident to his insurer.

[13] In *Brown*, No. 2018AP1799, we also cited favorably to the explanation of this procedure in the Wisconsin Practice Series on Workers' Compensation Law:

(continued)

¶31 Relying primarily on **Ruckel**, Mani argues that it does not matter whether Humana's crossclaims are grounded in subrogation because the made whole doctrine cannot be circumvented "even when unambiguous language in an insurance contract states otherwise."[14] In **Ruckel**, the insurance policy unambiguously stated that the insurer's subrogation rights were "prior and superior to the rights of any other person or entity, including the [insured]." **Id.**,

> Many employee claims for medical expenses will be paid by health insurers, even if the injuries are work-related and should be paid by the workers' compensation insurance carrier. In some instances, the health insurer pays because it does not realize the accident or disease was work-related, and in other cases, the claims will be paid by the health insurer because the workers' compensation carrier disputes that the injury was work-related (or the employer directs the employee to file a claim under the health insurance policy).
>
> In either case, the health insurer generally has the right to recoup the payments, because health insurance policies exclude payments of medical expenses covered by the workers' compensation carrier.
>
> ….
>
> Despite being unable to intervene in a workers' compensation proceeding directly, group health carriers can bring a separate claim in circuit court to recover payments against the employee through a contractual reimbursement clause in the group health policy.

**Id.**, ¶21 n.8 (citation omitted).

[14] In his brief, Mani directs us to the right to reimbursement provision of the policy and asserts that by seeking to recover directly from the UIM settlement, a portion of which the circuit court ordered to be held in trust, Humana's claims actually fall under that policy provision. The propriety of holding a portion of the UIM settlement in trust now that Humana is no longer exercising subrogation rights is not properly before this court, and we therefore do not address it. However, we reject Mani's argument that Humana's claims are based on the right to reimbursement provision rather than the workers' compensation provision. Since filing its new crossclaims, Humana has consistently maintained that the payments it made were for claims excluded under the workers' compensation provision, and its claims are not based on the right to reimbursement provision.

253 Wis. 2d 280, ¶19. The insurer in **Ruckel** argued that this contractual provision was specific and unambiguous, and it overrode the made whole doctrine. **Id.**, ¶20. Our supreme court agreed that the language was clear but refused to enforce that language because it was inequitable. **Id.**, ¶41. The court explained that "[s]ubrogation in this circumstance would not avoid double recovery or prevent unjust enrichment of the insured," but rather, "[i]t would authorize incomplete recovery for the insured and shift loss from the insurer, who was paid to assume loss, to the insured, who paid to protect against loss." **Id.** Thus, the court held "that an insured must be made whole before the insurer may exercise subrogation rights against its insured, even when unambiguous language in an insurance contract states otherwise." **Id.**, ¶4.

¶32 **Ruckel** made clear that an insurer cannot circumvent the made whole doctrine on its own say-so through policy language for that express purpose. However, to the extent Mani contends that **Ruckel** applies to an insurer's non-subrogation claims, Mani reads **Ruckel** out of context. In every Wisconsin case cited by Mani where the made whole doctrine was applied, the insurer was exercising subrogation rights. *See, e.g.*, **id.**; **Rimes v. State Farm Mut. Auto. Ins. Co.**, 106 Wis. 2d 263, 276, 316 N.W.2d 348 (1982) ("It is clear, in accordance with the general principles of subrogation accepted by this court and stated in **Garrity**, that the settlement in this case did not make the plaintiffs whole[.]"); **Garrity v. Rural Mut. Ins. Co.**, 77 Wis. 2d 537, 546-47, 253 N.W.2d 512 (1977) ("[T]he [insurer] has no right to share in the fund recovered from the tort[]feasor

until the [insured] is made whole."). Even the non-Wisconsin cases cited by Mani deal exclusively with insurers exercising subrogation rights.[15]

¶33    A common thread runs through the cases applying the made whole doctrine: the insurers are exercising subrogation rights to recover payments made on claims for which the insurers do not dispute coverage. In subrogation, a third-party tortfeasor causes a covered injury to the insured, triggering the insurer's obligation under the policy to pay medical benefits. Here, Humana's crossclaims assert that it was never obligated to pay Mani's benefits at all because Mani's injuries fell within the scope of a policy exclusion, namely, the Workers' Compensation provision.

¶34    Applying the made whole doctrine to Humana's crossclaims in this case, where these claims are based on a policy exclusion and are not grounded in

---

[15] *Hardware Dealers Mut. Fire Ins. Co. v. Ross*, 262 N.E.2d 618, 621 (Ill. Ct. App. 1970); *Maryland Cas. Co. of Baltimore v. Cincinnati, C., C. & St. L. Ry. Co.*, 124 N.E. 774, 775 (Ind. Ct. App. 1919); *Wine v. Globe Am. Cas. Co.*, 917 S.W.2d 558, 562-63 (Ky. 1996); *Continentall W. Ins. Co. v. Swartzendruber*, 570 N.W.2d 708, 712 (Neb. 1997); *Providence Wash. Ins. Co. v. Hogges*, 171 A.2d 120, 124 (N.J. Super. Ct. App. Div. 1961); *Lyon v. Hartford Accident and Indem. Co.*, 480 P.2d 739, 744-45 (Utah 1971) *overruled on other grounds by Beck v. Farmers Ins. Exch.*, 701 P.2d 795 (Utah 1985).

One case cited by Mani mirrors *Ruckel* in that the insurer, exercising subrogation rights, sought to circumvent the made whole doctrine by enforcing unambiguous contract language evincing an intent to do so. *York v. Sevier Cnty. Ambulance Auth.*, 8 S.W.3d 616, 618 (Tenn. 1999). The Supreme Court of Tennessee reached the same result as our supreme court did in *Ruckel*, concluding that "an insurer is not entitled to subrogation unless and until the insured has been made whole for his or her losses, regardless of what language is contained in the contract." *York*, 8 S.W.3d at 621.

subrogation, would be unprecedented. Accordingly, we conclude that the made whole doctrine does not apply to Humana's crossclaims.[16]

### III. Humana is not entitled to summary judgment.

¶35 Having concluded that the made whole doctrine does not apply to Humana's crossclaims, we turn to Humana's argument that it is entitled to summary judgment. We review summary judgments decisions de novo, applying the same methodology employed by the circuit court. *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶22, 268 Wis. 2d 16, 673 N.W.2d 65. "Summary judgment is properly granted if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Id.*

¶36 Humana argues that it is entitled to summary judgment on its declaratory judgment and breach of contract claims because it is undisputed that Mani was acting in the scope of his employment when the accident happened, and the treatment for which Humana paid was for injuries caused by the accident. We disagree that these two facts entitle Humana to summary judgment. Even if the facts relied on by Humana are undisputed (a conclusion we do not reach), the record is still replete with genuine issues of material fact.

¶37 For example, as Mani points out, there is no evidence in the record that Mani breached the insurance policy. In his affidavit, Mani denied any lack of cooperation with Humana, denied breaching any contractual provision, denied

---

[16] Although we question the effect of Humana's Worker's Compensation exclusion on the public policies enshrined in Wisconsin's Worker's Compensation Law, Mani does not challenge the exclusion as violative of public policy. We therefore do not address the issue.

receiving any demand for payment from Humana, never refused worker's compensation payments, and fully disclosed that AmTrust would not make further payments on his claim before Humana began making payments for his treatment. Humana never demanded payment directly from Mani, and instead, requested that Mani's attorneys maintain funds in trust, for which it claimed reimbursement based on subrogation. On this record, we cannot identify what provision of the policy Mani is alleged to have breached, let alone identify evidence of that breach.

¶38 Moreover, on appeal, Mani argues that Humana did not "mistakenly" pay Mani's claims. Mani asserts that there was no payment "in error" by Humana in this case because Humana paid Mani's medical bills knowing from the outset, and Mani conceding, that his injuries occurred at work. Mani asserts that "Humana undertook to pay Mani's bills with full knowledge that Mani was at work when injured by an underinsured motorist." Mani's affidavit in opposition to Humana's motion for summary judgment averred that he never withheld any information about his workers' compensation claim from Humana. Mani pleaded as an affirmative defense that Humana's crossclaims were barred by the voluntary payment doctrine, and the record contains a genuine issue of material fact with respect to that defense.[17] Accordingly, we conclude that the

---

[17] "The voluntary payment doctrine places upon a party who wishes to challenge the validity or legality of a bill for payment the obligation to make the challenge either before voluntarily making payment, or at the time of voluntarily making payment." *Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship*, 2002 WI 108, ¶13, 255 Wis. 2d 447, 649 N.W.2d 626. One of the reasons this doctrine was adopted was to operate "as a means to settle disputes without litigation by requiring the party contesting the payment to notify the payee of its concerns." *Id.*, ¶16. "The doctrine has been applied in several diverse contexts to preclude actions to recover payments that parties paid voluntarily, with full knowledge of the material facts, and absent fraud or wrongful conduct inducing payment." *Id.*, ¶13. The record in this case contains no evidence that Humana challenged its obligation to pay Mani's claims either before or at the time it paid them.

record in the instant case does not entitle Humana to summary judgment on its crossclaims.[18]

## CONCLUSION

¶39 We conclude that the made whole doctrine does not apply to Humana's crossclaims because those crossclaims are not grounded in subrogation. However, Humana is not entitled to summary judgment on its crossclaims because there are genuine issues of material fact to be resolved at trial. Accordingly, we reverse in part the circuit court's order dismissing Humana's crossclaims, affirm the circuit court's nonfinal orders denying Humana's motion for summary judgment and reconsideration, and remand the cause for further proceedings. Moreover, on remand, we instruct the circuit court to address the applicability of judicial estoppel to Humana's crossclaims.

---

[18] Having identified genuine issues of material fact precluding summary judgment, we need not reach Mani's other arguments in support of the circuit court's orders denying summary judgment and reconsideration. Nonetheless, before concluding, we question whether Humana should be judicially estopped from bringing its crossclaims. Judicial estoppel is intended to protect against a litigant playing "'fast and loose with the courts'" by asserting inconsistent positions. *State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996) (citations omitted). "Because the rule looks toward cold manipulation and not unthinking or confused blunder, it has never been applied where [the estopped party's] assertions were based on fraud, inadvertence, or mistake." *State v. Fleming*, 181 Wis. 2d 546, 558, 510 N.W.2d 837 (Ct. App. 1993) (citations omitted). Humana's original crossclaims alleged that it had become obligated to pay benefits under the policy as a result of the tortfeasor's negligence, while its new crossclaims specifically disclaimed any obligation to pay benefits under the policy. Moreover, Humana switched crossclaims only after it became clear that Mani was not made whole by the combined Allstate and Selective settlements (and, therefore, Humana would not be entitled to further recovery because of the application of the made whole doctrine). Although Mani did not raise this argument on appeal, he did plead judicial estoppel as an affirmative defense. In our view, because there may be facts in need of development on this issue, we choose not to address judicial estoppel in this opinion, but we instruct the circuit court to consider the issue on remand.

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded for further proceedings.

Recommended for publication in the official reports.